**FIRST JERSEY SECURITIES, INC., a Corporation of the State of New Jersey, Robert E. Brennan, Joseph Galligan, Jack Mondel, Charles Oehlert, John Dell, Michael Zudonyi, and Anthony Nadino, Respondents,**

v.

**George J. BERGEN, Individually and in his official capacity, and National Association of Securities Dealers, Inc., a Corporation of the State of Delaware, Petitioners,**

**and**

**Honorable Vincent P. Biunno, Judge, United States District Court, Nominal Respondent.**

**Nos. 79–1572, 79–1789.**

United States Court of Appeals, Third Circuit.

Argued July 12, 1979.

Decided Aug. 29, 1979.

Jonathan L. Goldstein (argued), Hellring, Lindeman, Goldstein & Siegel, Newark, N. J., for petitioner George Bergen.

Raymond M. Tierney, Jr. (argued), Shanley & Fisher, Newark, N. J., for petitioner National Association of Securities Dealers, Inc.

Donald A. Robinson, Ronald J. Riccio (argued), John B. Livelli, Robinson, Wayne & Greenberg, Newark, N. J., for respondents.

Before ADAMS, ROSENN, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

We are presented with a petition for a writ of mandamus, urging us to direct the district court to dismiss a suit for want of subject matter jurisdiction.[1] The suit was filed in the United States District Court for the District of New Jersey, by First Jersey Securities, Inc., and some of its officers and personnel ("First Jersey"), seeking to enjoin the National Association of Securities Dealers, Inc., (NASD) and George J. Bergen, vice president of NASD and District Director for NASD District 12, from proceeding with a disciplinary hearing. The complaint also sought monetary relief. First Jersey requested a preliminary injunction while NASD moved for dismissal of the suit. The district judge denied both motions and retained jurisdiction over the suit. NASD then filed this petition. We stayed discovery in the action pending final disposition of the matter in this court. Because the district court is without jurisdiction to entertain this action which has resulted in unwarranted interference with the administrative process, we will grant the petition for a writ of mandamus and direct the district court to dismiss the case.

## I. BACKGROUND

NASD is a securities association registered with the Securities and Exchange Commission pursuant to the provisions of the Maloney Act, 15 U.S.C. § 78o–3 (1976). The purpose of the voluntary association is to provide self-regulation of the over-the-counter securities market. The Maloney

---

1. An earlier petition for writ of mandamus (79–1572) requested that we prohibit the district court from granting the plaintiff's motion for early discovery. That petition has been effectively superseded by the second (79–1789), requesting dismissal of the suit. Petitioners have also moved to have the court of appeals take jurisdiction of the case and dismiss the complaint on the grounds that jurisdiction rests exclusively with the United States Court of Appeals. We know of no basis for taking such action, and we deny the motion.

Act authorizes the association to promulgate rules

designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest . . . .

15 U.S.C. § 78o–3(b)(6) (1976); *see United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 700–01 n.6, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); *Todd & Co. v. SEC,* 557 F.2d 1008, 1012 (3d Cir. 1977). Furthermore, the statute gives the association the power to discipline its members who fail to conform to the standard of conduct established by the organization. 15 U.S.C. § 78o–3(h) (1976). "The Act also authorizes the SEC to exercise a significant oversight function over the rules and activities of the registered associations." *United States v. National Association of Securities Dealers, Inc., supra,* 422 U.S. at 700–01 n.6, 95 S.Ct. at 2434.

The NASD is headed by a Board of Governors. Its certificate of incorporation and by-laws divide the organization into thirteen geographical districts, each headed by a District Committee. The District Committee is required to appoint a District Business Conduct Committee, which assumes primary responsibility for enforcing the NASD rules. *See* II L. Loss, Securities Regulation 1365–69 (2d ed. 1961).

In November 1977, NASD staff examiners began investigating First Jersey Securities, Inc., a New Jersey corporation. First Jersey, a registered member of NASD, has fourteen offices located in four states and Puerto Rico employing approximately 350 people. NASD claims that its investigators uncovered "a pattern of market domination and price manipulation used to perpetrate a massive fraud on First Jersey's public customers." On February 1, 1979, the Business Conduct Committee of District 12 began a disciplinary proceeding by issuing a complaint against First Jersey, Robert E. Brennan (its president), six branch managers, and the supervisor of the trading department. As of yet, no hearing has been held by the NASD on this matter.

On April 17, 1979, First Jersey filed suit in the United States District Court for the District of New Jersey against NASD and George Bergen. The complaint sought damages, declaratory relief, and an injunction enjoining NASD from proceeding further with its disciplinary action against First Jersey. It alleged that Bergen had a long-standing bias against Brennan and that he influenced and corrupted the entire Business Conduct Committee to hold a similar bias, the effect of which was to deny First Jersey's constitutional rights to a fair hearing before an impartial tribunal. The complaint further alleged that the NASD had violated or would violate the Administrative Procedure Act, the Maloney Act, and various internal rules, resulting in a gross abuse of power; that the Maloney Act is an unconstitutional delegation of legislative power to the NASD; and that Bergen had maliciously and willfully caused a deprivation of First Jersey's constitutional rights and interfered with its contractual and business relations. First Jersey moved, and was granted, leave to take early depositions pursuant to Fed.R.Civ.P. 30(a). The district court refused a subsequent request by NASD for a stay of discovery.

First Jersey requested a preliminary injunction, and at the same time, NASD moved for dismissal of the suit. On June 4, 1978, the district judge delivered an oral opinion denying both motions without prejudice. During the pendency of these motions, two developments occurred. First, the SEC instituted its own independent proceeding by issuing a complaint against First Jersey. Second, NASD decided to transfer its proceedings to District 8 headquarters in Chicago in order to vitiate the accusations of bias.

The denial of the injunction was based on eight assumptions.[2] The district court assumed, among other things, that the District 12 staff would disassociate itself with the proceedings in District 8 and that District 8 would not proceed until after the SEC hearings were completed. The court retained jurisdiction over the matter "in the event that the stated and implied assumptions may be frustrated." NASD subsequently advised the district judge that it intended to use the District 12 staff attorney, who up to that point had not been involved in the First Jersey investigation, to present the case to the District 8 panel, and that the NASD proceeding would not necessarily await completion of the SEC hearings. NASD also moved for certification under 28 U.S.C. § 1292(b) (1976) of the denial of the motion to dismiss. This request was denied, prompting NASD to file the petition for a writ of mandamus requesting that this court command the district court to dismiss the suit.

To succeed in obtaining a writ of mandamus, NASD must show that: 1) the district court lacks jurisdiction over First Jersey's suit, and 2) mandamus is the appropriate remedy in this case.

## II. JURISDICTION IN THE DISTRICT COURT

■ First Jersey contends that jurisdiction in the district court can be based on 15 U.S.C. § 78aa (1976) and 28 U.S.C. § 1331 (1976). 15 U.S.C. § 78aa provides in part: "The district courts . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." The primary purpose of this provision is to provide exclusive federal jurisdiction for suits brought by the SEC or private parties in response to substantive violations of the chapter. Although under certain circumstances section 78aa may confer jurisdiction on the district court to entertain suits against the NASD, cf., *Bright v. Philadelphia-Baltimore-Washington Stock Exchange*, 327 F.Supp. 495, 500 (E.D.Pa.1971), we reject the notion that this provision conclusively establishes jurisdiction in the district court in this case.

■ The same can be said for 28 U.S.C. § 1331. This statute grants jurisdiction to the district court for cases arising under the Constitution or laws of the United States, but it does not mean that jurisdiction is not precluded by another statute or doctrine of judicial administration.

NASD claims that the statutory review procedure establishes exclusive jurisdiction in the courts of appeals. Original jurisdiction over enforcing the NASD rules rests with the District Business Conduct Committee. The NASD Code of Procedure requires the District Business Conduct Committee to hold a hearing replete with procedural safeguards to determine whether sanctions should be imposed against an alleged violator of the rules. The written decision of the Committee is reviewable by a subcommittee of the NASD Board of Governors, which is in turn reviewed by the entire Board. The Board's ruling can be appealed to the SEC for a *de novo* review. 15 U.S.C. § 78s(d)(2) (1976). Finally, a "person aggrieved by a final order of the Commission . . .

---

2. The eight assumptions were:
   1) The complaint will be handled by District 8 staff and not District 12 staff.
   2) The staff attorney assigned to the case in District 12 will disassociate himself from any active function at the District 8 proceeding.
   3) The panel selection will be made by the chairman of the District 8 Business Conduct Committee (DBCC–8).
   4) The District 12 staff report will not be seen nor its contents disclosed to any member of DBCC–8.
   5) DBCC–8 will be "wholly unable" to process the complaint until after the SEC hearing is concluded.
   6) The SEC hearing record will be used for the NASD hearings before DBCC–8.
   7) DBCC–8 "may wish to consider" amending the complaint.
   8) DBCC–8 will set a new schedule for the NASD proceeding, taking into account the SEC hearing, among other things.

may obtain review of the order in the United States Court of Appeals" by filing a petition for review. 15 U.S.C. § 78y(a)(1) (1976). The statute further provides: "On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part." 15 U.S.C. § 78y(a)(3) (1976).

■ Thus, the statute, although establishing a comprehensive system of review, does not *explicitly* preclude an aggrieved party from seeking relief in a federal district court until the record is filed in the court of appeals. Yet the comprehensiveness of the review procedure suggests that the doctrine of exhaustion of remedies should be applied to prevent circumvention of the established procedures.

### A. The Doctrine of Exhaustion of Remedies

In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), the Supreme Court stated that it is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (footnote omitted). The primary purpose of this well-established doctrine is "the avoidance of premature interruption of the administrative process," *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), a concern which confronts us here. Furthermore, the principle allows the administrative agency to utilize its discretion and apply its expertise; it gives the agency the opportunity to correct its own errors; and it minimizes piecemeal appeals of agency actions. *Parisi v. David-*

*son*, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). "Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *McKart v. United States, supra*, 395 U.S. at 195, 89 S.Ct. at 1663; *McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971); K. Davis, Administrative Law of the Seventies §§ 20.01–20.08 (1976).[3] Courts have frequently required dissatisfied litigants to exhaust their administrative remedies before the SEC as well as other agencies before coming into federal district court. In *Touche Ross & Co. v. SEC*, No. 78–6095 (2d Cir. May 10, 1979), an accounting firm attempted to enjoin an SEC proceeding commenced to determine whether the firm had engaged in unethical or illegal conduct. The district court dismissed the suit and the Second Circuit affirmed, holding that a claim of agency bias will not preclude application of the exhaustion doctrine.

> We emphasize at the outset that normally we will not tolerate the interruption of the administrative process to hear piecemeal appeals of a litigant's claims on the merits. This is exactly what the exhaustion doctrine [is] designed to prevent. Accordingly, we wish to make it clear that Touche Ross must exhaust their administrative remedies by submitting to the Rule 2(e) proceedings before we will consider any challenges which they may assert with respect to any disciplinary action that the Commission may determine is appropriate under the circumstances.

*Id.* at 2568 (slip opinion).

Another case holding that judicial interference in an ongoing SEC proceeding was

---

**3.** Failure to exhaust administrative remedies may also raise constitutional problems:

> The general rule regarding the requirement of exhaustion of remedies is clear—when Congress has provided an administrative procedure which is capable of resolving a controversy such procedure must be utilized. It is only after the final administrative decision that the aggrieved parties may invoke the jurisdiction of the courts [citation omitted]. For the courts to act prematurely, prior to

the final decision of the appropriate administrative agency, would raise a serious question regarding the doctrine of the separation of powers, and in any event would violate a congressional decision that the present controversy be initially considered by the [agency].

> *American Fed'n of Gov't Employees, Local 1904 v. Resor*, 442 F.2d 993, 994 (3d Cir. 1971) (Adams, J.).

improper involved the allegation that one of the commission members participating in the proceeding should have been disqualified. Although preceding the decision in *Touche Ross*, the court also held: "The administrative proceedings cannot be stopped to allow for excursions in the courts with prolonged evidentiary hearings; the time for that in a proper case is when an aggrieved litigant seeks judicial review of agency action having preserved the point of claimed disqualification in the administrative hearing." *SEC v. R. A. Holman & Co.*, 116 U.S.App.D.C. 279, 282, 323 F.2d 284, 287 (D.C.Cir.), *cert. denied*, 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963). *See also R. A. Holman & Co. v. SEC*, 112 U.S.App. D.C. 43, 299 F.2d 127 (D.C.Cir. 1962), *cert. denied*, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1963).

■ We believe that the doctrine of exhaustion of administrative remedies applies with equal force to the disciplinary proceedings of the NASD. *See* II L. Loss, Securities Regulation 1376 n.73 (1961). The relevant statutes have established a comprehensive review procedure. The disciplinary proceeding begins with the District Business Conduct Committee and advances, if appealed, to the NASD Board of Governors, to the SEC, and finally to the United States Court of Appeals. This structure allows the agency to gather evidence, exercise its discretion, and apply its expertise at more than one level. It also gives the agency the opportunity to correct its own errors without resort to the courts and an opportunity for litigants to raise and preserve the issue of claimed bias. For administrative procedure to operate effectively, it is essential that courts refrain from interfering with the process unnecessarily. *See Nader v. Volpe*, 151 U.S.App.D.C. 90, 94–97, 466 F.2d 261, 265–68 (D.C.Cir. 1972). Ultimate review by the court of appeals ensures that constitutional or statutory errors will not go unremedied.

## B. *The Exceptions*

■ Even when the exhaustion doctrine would normally apply, extraordinary circumstances, nevertheless, may compel a court to hear a case. *See, e. g., McKart v. United States*, 395 U.S. 185, 192–201, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). "[W]here 'an immediate appeal is necessary to give realistic protection to the claimed right,' . . . a court may properly carve an exception to the doctrine. Only rarely, however, will 'preliminary [or] procedural . . . agency action' threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process . . . ." *Bristol-Myers Co. v. FTC*, 469 F.2d 1116, 1118 (2d Cir. 1972). In this Circuit, we have recognized two situations in which the exhaustion requirement will not be adhered to: 1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation. *Barnes v. Chatterton*, 515 F.2d 916, 920 (3d Cir. 1975); *American Federation of Government Employees, Local 1904 v. Resor*, 442 F.2d 993, 994–95 (3d Cir. 1971).

### 1. Irreparable Injury

■ First Jersey alleges that irreparable harm will result from requiring exhaustion of administrative remedies because an adverse ruling by the NASD "would in all probability be terminal to First Jersey." Furthermore, such a ruling "would likely cause panic selling in securities in which First Jersey makes a market, thereby causing great harm to an unsuspecting public." The sole evidence presented by First Jersey in support of these allegations is the affidavit of Robert Brennan, president of the company.

In our view, these allegations are insufficient to bring this case within the narrow exception. First, NASD proceedings are kept confidential which should prevent damaging publicity to First Jersey or the specific securities involved. Second, if the NASD decides to impose sanctions, they would be subject to the statutorily prescribed review procedure, including review by the court of appeals. Finally, and most importantly, if this exception were to be

applied in this case, it would likewise apply in every case where the NASD contemplated disciplinary proceedings. Any company threatened by an NASD hearing could run into district court claiming that the imposition of sanctions would result in irreparable injury. To allow such interruption would frustrate the self-regulatory scheme envisioned by Congress in passing the Maloney Act. Although we recognize the potential for harm that exists, we believe that the integrity of the administrative process requires us to reject this justification for intrusion.[4]

### 2. Clear and Unambiguous Violation

■ Under the second exception, a mere allegation of a constitutional deprivation is insufficient to entitle the plaintiff to relief. *See Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 771–72, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); *Montana Chapter of Association of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1167 (9th Cir. 1975); *Wallace v. Lynn*, 165 U.S.App.D.C. 363, 507 F.2d 1186 (D.C.Cir. 1974). The plaintiff must present a clear and unambiguous constitutional violation by the agency. *See Barnes v. Chatterton, supra*, 515 F.2d at 920. First Jersey makes several allegations of unconstitutionality, none of which are sufficient to excuse the failure to exhaust administrative remedies.

### a. Unconstitutional Delegation

■ First Jersey claims that the Maloney Act is an unconstitutional delegation of legislative power to a private institution. In *Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir. 1977), we found no merit to this argument, because the SEC

(1) has the power, according to reasonably fixed statutory standards, to approve or disapprove the Association's rules; (2) must make *de novo* findings aided by additional evidence if necessary,

and (3) must make an independent decision on the violation and penalty . . . .

*Id.* at 1012; *see R. H. Johnson & Co. v. SEC*, 198 F.2d 690 (2d Cir.), *cert. denied*, 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952).

First Jersey points out, however, that the statute was amended in 1975 and the *Todd* court specifically refused to rule on the constitutionality of the amendment. *See* 557 F.2d at 1012 n.6. Prior to 1975, the review provision of the statute called for the SEC to render its decision "upon consideration of the record before the association and such other evidence as it may deem relevant . . . ." 15 U.S.C. § 78*o*–3(h)(1) (1970). The statute now provides that the SEC hearing "may consist solely of consideration of the record before the self-regulatory organization and opportunity for the presentation of supporting reasons to affirm, modify, or set aside the sanction . . . ." 15 U.S.C. § 78s(e)(1) (1976). We need not now decide whether this statutory change effects a significant alteration in the SEC's power to review NASD disciplinary proceedings. It suffices to say that to the extent the amendment restricts the SEC's ability to receive additional evidence not presented below, this does not alter our conclusion in *Todd* that there is no unconstitutional delegation of legislative authority.

### b. Bias

■ The major thrust of First Jersey's contentions of unconstitutionality deal with the alleged bias of NASD and its inability to conduct a fair hearing before an impartial tribunal. This attack is carried at two levels: 1) because the Business Conduct Committee is composed of members of the industry, any panel of judges, as competitors of First Jersey, will have a personal pecuniary interest in seeing sanctions imposed against First Jersey; and 2) specific

---

**4.** We rejected a similar claim in *Barnes v. Chatterton*, 515 F.2d 916, 921 (3d Cir. 1975):

The requirement that Barnes exhaust his administrative remedies thus affects only the timing, not the effectiveness of judicial review. The delay, of course, is not without cost and we regret the additional pecuniary

hardship and stress imposed upon Barnes. We are bound, however, by the holding of the Supreme Court that such costs do not constitute irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 84–92, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

allegations portray Bergen's and the NASD staff's long-standing bias against Brennan and First Jersey.

### (1.) Structural Bias

The first, which amounts to an allegation of structural bias and was expounded for the first time in a supplemental brief requested by the Court at oral argument, relies primarily on the Supreme Court decision in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). In *Gibson*, the Alabama Board of Optometry intended to revoke the licenses which were required to practice of all optometrists employed by corporations, a group comprising about one-half of all the optometrists in the state. Members of the Board were drawn exclusively from the Alabama Optometric Association, whose membership was limited to independent practitioners. The district court found that the Board members, along with other private practitioners of optometry, would fall heir to the corporate practices if the licenses were revoked. The Supreme Court affirmed the district court's conclusion that this amounted to a deprivation of due process, holding that "those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* at 579, 93 S.Ct. at 1698. *See also Carter v. Carter Coal Co.*, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Wall v. American Optometric Association*, 379 F.Supp. 175 (N.D.Ga.), aff'd, 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974).

Reliance on *Gibson* cannot provide First Jersey with a clear and unambiguous constitutional violation in this case. We believe that the NASD system of self-regulation is sufficiently dissimilar in crucial respects from the Alabama Board of Optometry's method of regulation to render the former constitutionally sound. NASD is a voluntary association, not a state agency. Unlike the Alabama Board of Optometry, NASD approval is not required to practice the trade. Neither NASD nor the industry it regulates is divided into factions or identifiable groups in a manner comparable to the independent practitioners versus the optometrists employed by corporations in *Gibson*. Neither First Jersey nor firms like it are excluded from membership in the association and, unlike the optometrists in Alabama, they were not denied participation in the governance of their own profession. In *Wall v. American Optometric Association*, 379 F.Supp. 175, 189 (N.D.Ga.), aff'd, 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), the court pointed out that "[e]very member of the tribunal is a member of a group which opposes the continuation of the plaintiffs' businesses." That division is not present here.

Furthermore, the NASD hearing has been transferred to District 8, meaning that members of the panel will be drawn from the Chicago area. First Jersey does not have any offices in that area, but if it believed that one or more members of the panel were direct competitors with a personal interest in the outcome, it could file a motion to have those members disqualified through the administrative process. In addition, the basis for the disciplinary proceeding is not a status violation, similar to *Gibson* or *Wall*, which could lead to the demise of a substantial block of the industry; it stems instead from specific allegations of misconduct applicable only to First Jersey.

Finally, to uphold First Jersey's contention would destroy the valuable congressional scheme for self-regulation in the securities area and the destruction could very well extend to other areas employing intramural controls. The Maloney Act expresses Congress's thoughtful view that self-regulation is the best "first-line" defense against unethical or illegal securities practices. It allows the industry to set its own standards of proper conduct and permits their members to discipline themselves applying their own expertise and experience.

Although Congress preferred self-regulation by a private body over direct involvement of a governmental agency, it established safeguards to prevent abuse of the system. The Maloney Act requires specific procedural protections, some of which are drafted by the association. For example,

the NASD Code of Procedure, unlike the proceedings before the Alabama Optometric Board in *Gibson*, requires the disqualification of any panel member who may have a personal interest in the outcome of the case. Further insurance against abuse is provided by the supervisory role of the SEC. The SEC is required to approve all the NASD rules and regulations, including those concerning discipline of NASD members. This oversight function also encompasses review of specific cases imposing sanctions. We believe that the intrinsic benefits of a system of self-regulation, insulated with extensive procedural and substantive protections and subject to judicial review, renders insignificant objections of bias to the system which inherently involves disciplining by potential competitors. We therefore reject First Jersey's contention that the NASD scheme for self-regulation is unconstitutional.

### (2.) Specific Bias

The second prong of First Jersey's assault for bias against NASD deals with specific allegations of animosity on the part of Bergen and the NASD against First Jersey. The evidence of bias recited in First Jersey's complaint includes among other things the allegations that Bergen has said that he is out to "get Brennan," that he has called Brennan "slippery," that he has "personally devote[d] his full concentration and energies to First Jersey and Brennan," that NASD agents have referred to Brennan as a crook and have threatened uncooperative witnesses with reprisals. Regardless of the merit of First Jersey's claim, we hold that absent a showing of irreparable harm, allegations of personal bias are insufficient to excuse a plaintiff from the requirements of the exhaustion doctrine.[5]

---

**5.** Contrary to First Jersey's argument, *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), does not stand for the proposition that an allegation of agency bias renders exhaustion of remedies inapplicable. The complaint in *Gibson* was based on 42 U.S.C. § 1983, and "state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." *Id.* at 574, 575 n.14, 93 S.Ct. at 1696. NASD is not a state

In *Touche Ross & Co. v. SEC, supra,* the Second Circuit refused to allow an allegation of agency bias to excuse the failure to exhaust administrative remedies.

If the claim of bias were the only basis for appellants' demand for injunctive relief, it would be unnecessary for us to go further than to hold, with respect to that claim, that exhaustion of administrative remedies is required. As the Court of Appeals for the District of Columbia Circuit has held, allegations of agency bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole. *R. A. Holman & Co., v. SEC* [112 U.S. App.D.C. 43, 45], 299 F.2d 127, 129 (D.C. Cir.), *cert. denied,* 370 U.S. 911 [82 S.Ct. 1257, 8 L.Ed.2d 404] (1962); *National Lawyers Guild v. Brownell* [96 U.S.App. D.C. 252, 255], 225 F.2d 552, 555 (D.C.Cir. 1955), *cert. denied,* 351 U.S. 927 [76 S.Ct. 778, 100 L.Ed. 1457] (1956). We agree. Until the Commission has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention.

*Id.* at 2568–69 (slip opinion); *see supra* at 694–695.

The principles underlying the exhaustion doctrine are particularly apt when applied to a claim of bias.[6] *See United States v. Litton Industries, Inc.,* 462 F.2d 14, 17–18 (9th Cir. 1972). First, an allegation of bias is usually controverted; resolution of the dispute requires extensive discovery and evidentiary hearings before the district court.

---

agency; therefore, First Jersey is unable to state a claim under section 1983.

**6.** Where the evidence of bias is clear and uncontroverted and the claimed infirmity is fundamental, some courts have waived the exhaustion requirement. *See Amos Treat & Co. v. SEC,* 113 U.S.App.D.C. 100, 105, 306 F.2d 260, 265 (D.C.Cir. 1962); *Association of Nat'l Advertisers, Inc. v. FTC,* 460 F.Supp. 996, 998–99 (D.D.C.1978).

This results in substantial interference with the administrative process, which often, as in this case, cannot continue during the pendency of the suit. *See SEC v. R. A. Holman & Co., supra,* 116 U.S.App.D.C. at 282, 323 F.2d at 287. *See also Maremont Corp. v. FTC,* 431 F.2d 124, 128 (7th Cir. 1970). Furthermore, where the facts are in dispute, it is difficult for the plaintiff to assert a clear and unambiguous constitutional violation. *See Sterling Drug, Inc. v. FTC,* 146 U.S.App.D.C. 237, 239–40, 450 F.2d 698, 710–11 (D.C.Cir. 1971).

Second, a claim of bias tendered during the course of an investigatory proceeding is unlikely to allege a constitutional violation that has already occurred. First Jersey claims that its due process rights have been infringed, but fails to point to any specific deprivation of liberty or property that has occurred at this time. Such a deprivation as a result of the alleged bias and investigative irregularities would only occur if and when sanctions are imposed by the NASD and upheld through all levels of review. *See National Lawyers Guild v. Brownell,* 96 U.S.App.D.C. 252, 255, 225 F.2d 552, 555 (D.C.Cir. 1955), *cert. denied,* 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956).

Finally, if exhaustion is required, the agency will often have the opportunity to correct or prevent an error as a result of bias. Most agencies provide for disqualification of members who may be biased. Other remedies may also be available. Here, for example, the transfer of the hearing to District 8 would appear to negate the effectiveness of Bergen's alleged ability to influence the result against First Jersey.[7]

▇▇▇ We conclude therefore that First Jersey's failure to exhaust its administrative remedies rendered the district court without jurisdiction to entertain the suit. The proper response by the district court would have been to grant NASD's motion for dismissal. If and when sanctions are imposed on First Jersey, the company would have full and ample opportunity to present its due process and statutory claims to the court of appeals.

---

7. The various violations of the Maloney Act and the Administrative Procedure Act alleged

## III. THE REMEDY

▇▇▇ Having established that the district court lacks subject matter jurisdiction to entertain this suit, NASD faces the additional hurdle of showing that mandamus is the appropriate remedy. Section 1651(a) of 28 U.S.C. provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of mandamus is a drastic remedy and its availability is closely circumscribed. "[T]he 'traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978), *quoting from Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). In order to obtain issuance of the writ, a petitioner must show that there are no other adequate means of relief and the right to the writ is clear and indisputable. *Kerr v. United States District Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *United States v. Helstoski,* 576 F.2d 511, 516 (3d Cir. 1978), *aff'd,* —— U.S. ——, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979). The Supreme Court has expressed two reasons for the reluctance to rely on the mandamus remedy: the "unfortunate consequence" of making the district court judge a litigant and "the interest of the fair and prompt administration of justice to discourage piecemeal litigation." *Kerr v. United States District Court, supra,* 426 U.S. at 403, 96 S.Ct. at 2124.

Courts have at times issued the writ to correct a clear abuse of discretion by the district court. *See LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d

---

by First Jersey also fall far short of the required standard of clear and unambiguous.

290 (1957); *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967). The recent Supreme Court case of *Will v. Calvert Fire Insurance Co., supra*, however, may have limited the availability of mandamus under those circumstances. In that case, the court of appeals issued a writ to reverse the district court's decision to defer the federal court suit to concurrent state proceedings between the same parties. The Supreme Court reversed, holding that the requirements for the writ had not been met. Justice Rehnquist pointed out that the district court has wide latitude in setting its own calendar, which was, in effect, the issue in question. *Id.* 437 U.S. at 655, 98 S.Ct. 2552. He went on to say that "[w]here a matter is committed to the discretion of [the] district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Id.* at 665–66, 98 S.Ct. at 2559.

■ We believe, however, that the strict requirements for mandamus have been met in this case. NASD, in an effort to carry out its designated duty of enforcing the regulations of over-the-counter securities dealers, instituted a disciplinary proceeding against First Jersey. First Jersey attempted to block this effort by filing suit in district court. Because of the company's failure to exhaust administrative remedies, the district court was without jurisdiction and should have dismissed the suit. Instead the court allowed discovery to proceed, which burdened NASD sufficiently to effectively halt the action against First Jersey. The court, although denying First Jersey's request for preliminary relief, did so on the basis of certain assumptions. It retained jurisdiction over the suit and invited the company to return to court in the event any of the assumptions proved to be unfounded, which NASD states is the case as to some of the assumptions. This has the forceful effect of an injunction but precludes appellate review. Thus, NASD lacks an alternative means of obtaining adequate relief. The district court's exercise of jurisdiction where none exists and foreclosing appellate review results in substantial interference with a congressionally mandated administrative process and amounts to a judicial usurpation of power.

■ We are unpersuaded by the argument that because the doctrine of exhaustion of remedies calls for some measure of discretion, *Will v. Calvert Fire Insurance Co., supra*, prohibits use of mandamus. Almost every judicial decision involves at least an element of latitude of choice within certain bounds. The degree of discretion varies with the differing legal bounds applicable to a decision. When the bounds circumscribing the relevant decision are few or broadly defined as in *Will v. Calvert Fire Insurance Co., supra*, (whether to defer to concurrent state proceeding between the same parties) or *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (whether to order a party to file a bill of particulars), mandamus is an inappropriate remedy because the right to mandamus cannot be clear and indisputable. But where, as here, the decision is closely restricted by well-defined legal principles, the need for and the right to mandamus can be clear and indisputable.[8] We hold that when the district court impermissibly interferes with the legitimate operation of a federal administrative agency, the agency is entitled to the issuance of a writ of mandamus to halt the judicial usurpation of power.

Moreover, the purposes of refraining from exercising our power to issue extraordinary writs would not be served by deny-

---

8. The Ninth Circuit reached a similar conclusion concerning the limited discretion involved in applying the exhaustion doctrine:

Although the cases sometimes refer to the development of judge-made exhaustion requirements as being within the courts' "discretion," the decision whether to require exhaustion is not discretionary in the sense that it can be made solely on the basis of the equities in any given case without regard to authoritative precedent. Rather, judicially-developed exhaustion requirements are "common law" rules in that the decisions of appellate courts on this issue will govern the subsequent decisions of the lower courts to which they properly apply.

*Montgomery v. Rumsfield*, 572 F.2d 250, 254 n.4 (9th Cir. 1978).

ing the writ in this case. The "unfortunate consequence" of making a judge a litigant is of only limited applicability in this Circuit since we changed the mandamus procedure in *Rapp v. Van Dusen*, 350 F.2d 806 (3d Cir. 1965) (en banc). The district judge is now only named as a nominal respondent and is not required to file an answer to the petition. The prevailing party in the challenged decision is deemed to be the respondent and is required to defend the action in the court of appeals. Thus, the district judge is relieved of the burdens normally associated with a petition for mandamus.

In addition, the "interest of the fair and prompt administration of justice" is better served by ordering this case dismissed immediately, than by refusing to do so in order to discourage piecemeal appeals. This point is underscored by our concern for the competing demands on the district court's time and its heavy calendar and the recognition of the Supreme Court's concern with the "era of excessively crowded lower court dockets." *Kerr v. United States District Court, supra*, 426 U.S. at 403, 96 S.Ct. at 2124. Allowing this case to proceed in the district court would be to ignore the practical benefits writs of mandamus can serve to improve judicial administration.

Finally, First Jersey contends that we are precluded from issuing a writ by the earlier case of *American Airlines v. Forman*, 204 F.2d 230 (3d Cir.), *cert. denied*, 346 U.S. 806, 74 S.Ct. 54, 98 L.Ed. 336 (1953). In that case, Slick Airways brought a "familiar type" of antitrust action against American Airlines. *Id.* at 231. American Airlines moved to dismiss the suit, arguing that the Civil Aeronautics Board had primary jurisdiction over the suit because it affected air travel. The district court denied the motion, and the airline petitioned for mandamus. The court of appeals denied the petition and added that a challenge to a jurisdictional ruling was usually not enough to call for issuance of a writ:

> The challenged assumption or denial of jurisdiction must be so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provi-

sions of a statute or settled common law doctrine. If a rational and substantial legal argument can be made in support of the questioned jurisdictional ruling, the case is not appropriate for mandamus or prohibition even though on normal appeal a reviewing court might find reversible error.

*Id.* at 232.

We believe that *American Airlines* is inapposite to the instant case for several reasons. The underlying dispute in *American Airlines* was a typical antitrust action between two private parties normally heard in federal district court. The district court carefully analyzed the relevant statutes and policy concerns and concluded that on the basis of the complaint there was no reason to refer the matter to the CAB. The alleged harm to American Airlines was having to defend an action in a forum usually reserved for antitrust suits rather than before the CAB. The only "interference" with the administrative agency was the refusal to direct the parties to take their dispute to the CAB. If the matter did belong before the CAB, then it could be sent there after a normal appeal, a remedy adequate to serve the interests of the agency.

Here, on the other hand, we have a private party asking a federal court to exert its power to direct an agency to halt the normal operation of its delegated regulatory duties mandated by federal law. Only in rare instances will a federal court consider issuing orders restraining the administrative process functions. Those circumstances are not present in this case and the district court should have dismissed the suit. Its refusal to do so has resulted in substantial interference with the administrative process and has rendered the NASD unable to carry out its delegated responsibilities. The harm is too great to go unremedied.

In addition, the change in procedural operations in this Circuit has undercut the rationale of *American Airlines*. Judge Hastie justified the extreme reluctance to issue a writ in part because "[p]rocedurally, these extraordinary remedies are actions

against the judge himself, requiring him personally to justify and defend what he has done as a judge. . . . [I]n a very real sense the judicial officer himself is being put on trial." *American Airlines v. Forman, supra,* 204 F.2d at 233. As discussed above, however, the procedure for obtaining writs in this Circuit was changed in *Rapp v. Van Dusen, supra.* Although resort to this extraordinary remedy should still be approached with great caution, this particular concern has been considerably alleviated.

## IV.  CONCLUSION

The petition for writ of mandamus in 79–1789 will be granted directing the district court to dismiss First Jersey's suit against NASD.  The petition in 79–1572 will be dismissed and the motion to have this court take jurisdiction and dismiss the case will be denied.  Costs in 79–1789 will be taxed against the respondents, excluding the nominal respondent.  Costs in 79–1572 will be taxed against the petitioner.