Joseph SILBERMAN

v.

John C. BOGLE et al.

Civ. A. No. 77–3753.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Feb. 6, 1980.

---

Fred Lowenschuss, Fred C. Aldridge, Philadelphia, Pa., for plaintiff.

F. Hastings Griffin, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

The issues presented by defendants' Motions to Vacate Orders, for Reargument, and for Security for Costs and a Stay of Proceedings involve questions concerning the proper relationship between proceedings in this court and those before the Securities and Exchange Commission (SEC). As noted in our September 28, 1979 Memorandum of Decision, in the present action a shareholder of Wellington Fund asserts that in the course of the Fund's participation in a joint distribution arrangement with other mutual funds, the directors breached their fiduciary duty and issued misleading proxy statements. In addition to initiating this action, plaintiff intervened in an application submitted to the SEC by the Funds to secure approvals and exemptions pursuant to sections 17(d), 6(c) and 17(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. The SEC gave temporary approval to the proposed arrangement and also ordered a full hearing. The administrative law judge found the formula for allocating costs among the funds unfair to Wellington Fund, but later approved a revised formula. This approval is currently under review by the full Commission.

### Jurisdiction

■ Before considering defendants' motions, we must first decide whether an appeal of part of our order of September 28, 1979 divests us of jurisdiction. On October 30, 1979 plaintiffs filed a notice of appeal seeking review of our decision not to disqualify the law firm of Stradley, Ronon, Stevens and Young or to permit joinder of that firm as a defendant. Ordinarily, the filing of a notice of appeal immediately transfers jurisdiction of a case to the Court of Appeals. *SEC v. Investors Security Corp.*, 560 F.2d 561, 568 (3d Cir. 1977); *Plant Economy, Inc. v. Mirror Insulation Co.*, 308 F.2d 275 (3d Cir. 1962). But in various circumstances where the judgment appealed does not finally determine the entire action, the district court may proceed with matters not involved in the appeal. 9 Moore's Federal Practice ¶ 203.11 at 739. *See, e. g., Gaudiosi v. Mellon*, 269 F.2d 873 (3rd Cir. 1959), *cert. denied*, 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959) (where district court expressly reserved class action claim, that claim being outside the scope of the appeal). The novel question presented here is whether the appeal falls under the general rule divesting our jurisdiction or within the exceptions to that rule.

An appeal from our refusal to disqualify the law firm is currently cognizable by the Court of Appeals, if at all, as a collateral order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The Court of Appeals for the Third Circuit recently expanded upon that doctrine:

> The disqualification order is a "collateral order" which, although it does not terminate the claims in litigation, does finally dispose of an issue entirely separable from and independent of those claims which involves the risk of irreparable injury and the loss of an important right if immediate review is denied. *International Business Machines Corp. v. Levin*, 579 F.2d 271, 278 (3d Cir. 1978).

The varying reasons for granting review have conflicting implications for an attempt to define the limits of our jurisdiction. The "separable" nature of the disqualification order weighs in favor of proceeding with the rest of the case. Yet the purpose of immediate review, to prevent irreparable injury, might be undermined if we conducted the trial with Stradley as counsel before the Court of Appeals considered the appeal.

The carefully circumscribed nature of the jurisdiction of the Court of Appeals under the collateral order doctrine signifies that we are not divested of jurisdiction over the remaining issues. In *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977), the Court of Appeals carefully noted that it did not obtain jurisdiction over all issues in a case when it granted review of an order refusing to disqualify an attorney. Because the order was separable, the court could consider it apart from other matters before the district court. If the Court of Appeals is not asserting jurisdiction over any issue not directly appealed, the district court retains jurisdiction.

Despite our power to proceed, the particular nature of the order under appeal and the possible harm or prejudice created weigh heavily in deciding whether to stay the action pending the outcome of the appeal. *See generally*, 15 Wright and Miller, Federal Practice and Procedure, § 3911 at 497. The harm to any party in conducting discovery appears minimal. Defendants have voluntarily selected Stradley as counsel and plaintiff does not contend he is being harmed by Stradley's representation at the pretrial stage. Indeed, only the independent directors have questioned on jurisdictional grounds whether discovery should commence, and they have not asserted any prejudice. Conducting the trial, however, may create different problems. The Court of Appeals may ultimately rule that Stradley should not have represented defendants and require a new trial. Accordingly, we shall proceed at present, reserving decision on whether to await the ruling of the Court of Appeals once discovery is complete.

### The Motions

To bring the current pretrial controversy into focus, a brief examination of jurisdiction under the Investment Company Act is helpful. Section 6(c) of the Act gives the Commission power to exempt persons, securities or transactions from any provision of the Act.[1] Section 17(b) grants power to exempt a transaction from restrictions imposed by § 17(a) concerning sales between affiliated persons and companies.[2] Section 17(d) and Rule 17d–1 require an investment company wishing to conduct transactions involving joint participation with affiliated persons to first convince the SEC that the transactions are not less advantageous to the corporation than to any other participant.

In light of these provisions and the general expertise of the SEC in interpreting and enforcing the Act, the SEC appears to be the exclusive decision maker with regard to § 17(d) and the exemptions. *See generally, E. I. du Pont de Nemours and Co. v. Collins*, 432 U.S. 46, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977). Various other provisions, however, give the district court power to hear cases arising under the act. *See, e. g.*, § 44, 15 U.S.C. § 80a–43; § 36(b)(5), 15 U.S.C. § 80a–35(b)(5). To ensure that the courts and the agency do not work at cross purposes, § 38(c) of the Act provides that no liability may be imposed for any act done "in good faith in conformity with any . . . order of the commission." The district court may neither review the decision of the SEC nor make its own independent assessment of the fairness of the activity. On the other hand, when acts are not performed in good faith in conformity with the SEC's order, the district court has the duty to determine whether the Act has been violated and if so to order the appropriate remedy.

Defendants' arguments in support of their motion touch upon this relationship between the SEC and the district court. First they contend that according to the

---

1. 15 U.S.C. § 80a–6(c). The standard to be employed under this section is "if and to the extent that such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of this subchapter."

2. 15 U.S.C. § 80a–17(b). The standard under this section is whether "the terms of the proposed transaction, including the consideration to be paid or received, are reasonable and fair and do not involve overreaching on the part of any person concerned . . . .."

administrative law judge's supplemental initial decision, defendants acted in good faith throughout the proceedings. Defendants believe this should eliminate any genuine issue as to their good faith and entitle them to summary judgment under § 38(c). Second, defendants argue that even if a genuine issue still exists, the decision of the administrative law judge will bind plaintiff under the doctrines of res judicata and collateral estoppel if and when it is affirmed by the SEC. Thus, according to defendants, plaintiff should not be permitted to contest either the original or modified distribution arrangements in this court without first exhausting administrative remedies. Finally, defendants suggest that they are entitled to summary judgment under § 38(c) unless plaintiff can affirmatively show lack of good faith estopping defendants from asserting their statutory defenses.

First, we disagree that the administrative law judge determined whether defendants made their initial presentation to the SEC in good faith. The judge was chiefly concerned with the fairness of the modified formula, and made no express findings of good faith in the initial application.[3] Basically, defendants' argument is founded on the refusal of the administrative law judge to apply the modified formula retroactively in light of the temporary exemption given by the Commission. While we agree that good faith may be relevant to this decision, the judge may not have investigated that issue regarding the Commission's order as binding upon him under all circumstances. Whether the SEC will decide the good faith question in the course of its own assessment of the modified formula is problematic.

■ To determine whether the judicial doctrine of exhaustion of administrative remedies bars plaintiff's claims at this time, we must explore the varied purposes of the doctrine. Based on the " 'long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted,' " the "primary purpose of this well-established doctrine is 'the avoidance of premature interruption of the administrative process.' " *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979), quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938) and *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Requiring a plaintiff to first seek redress before the administrative agency allows application of agency expertise and discretion, gives the agency the opportunity to correct its own errors and minimizes piecemeal appeals of agency actions. *First Jersey Securities*, 605 F.2d at 695. *See also, In Matter of Establishment of Restland Memorial*

---

3. The following issues were before the administrative law judge:

(1) whether the proposed internalization of the distribution function of the Vanguard Funds is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act;

(2) whether the participation of each of the Vanguard Funds in the proposed internalization of the distribution of their shares through the use of Marketing is consistent with the provisions, policies and purposes of the Act and whether such participation is on a basis different from or less advantageous than that of other participants;

(3) whether it is appropriate for expenses that may be incurred by Marketing in forming one or more new investment companies to be paid out of assets of any or all of the Vanguard Funds;

(4) whether it is appropriate for expenses incurred in distributing the shares of one fund in the Vanguard complex to be paid out of assets of any or all of the funds in the Vanguard complex;

(5) whether it is appropriate for the Vanguard Funds to internalize their distribution services without internalizing their investment advisory services;

(6) whether it is appropriate for the Vanguard Funds to characterize themselves as "no-load", and whether any final order of the Commission granting the requested exemptions should include conditions prohibiting such characterization or subjecting the Vanguard Funds to other disclosure requirements if such a phrase is used.

Initial Decision of Administrative Law Judge at 16–17.

*Park*, 540 F.2d 626 (3d Cir. 1976). Additionally, a requirement of exhaustion implements Congressional intent, preserves the separation of powers, *American Federation of Government Employees v. Resor*, 442 F.2d 993 (3d Cir. 1971), and at times may eliminate difficult constitutional questions. *Babcock ʼand Wilcox Co. v. Marshall*, 610 F.2d 1128 (3d Cir. 1979). The doctrine is applicable to administrative remedies available before the SEC. *See First Jersey Securities*, 605 F.2d at 695.

■ According to defendants, the remedies plaintiff has failed to exhaust derive from the ongoing exemption proceeding. At present, the modified distribution arrangement is before the SEC for review. We agree that to the extent the issues presented here will be decided in the course of the SEC's review or require the exercise of the SEC's discretion or expertise, the doctrine allocates initial consideration to the SEC. The questions before the Commission centrally involve the fairness of the modified allocation formula approved by the administrative law judge after extensive hearings. Plaintiff may not challenge in this court the fairness of that formula.[4] If plaintiff wishes us to substitute our judgment for that of the SEC or interfere with the SEC proceeding, the complaint cannot stand. We will thus limit claims of unfairness only to the initial formula rejected by the administrative law judge, liability of course being subject to the good faith defense.

■ The fifth count of plaintiff's complaint is also encompassed within the matters before the SEC. In this count, plaintiff contends that shareholders who paid a sales charge (load) when they purchased their shares are unfairly required to pay similar charges as part of the joint arrangements. Administrative Law Judge Regensteiner found that "if fairness in the allocation method can be achieved, the overall benefits of the internalized distribution would be sufficient . . . to outweigh the disparity in impact upon different groups of investors." Initial Decision, 73–74. Based upon the facts found by the judge (its expertise) and its view of the policies of the Act (its informed discretion), the SEC will determine whether the proposal is fair to this group of shareholders. Consequently, Count V will be dismissed.[5]

■ The other claims including breach of fiduciary duty, proxy violations, improper activities by Wellington Management Company and unfair exchange of assets do not fall within the Commission's current review. As discussed earlier, the Commission is considering whether the Funds should be granted exemptions and § 17(d) approval to participate in joint distribution. The remaining claims in this action will not be affected by the SEC proceeding. The administrative law judge has already found the initial arrangement unfair to Wellington Fund, and this decision (as opposed to approval of the modified formula) has not been contested. Defendants do not allude to any other administrative procedure required or even available to challenge the allegedly improper activity. The exhaustion doctrine is thus inapplicable to these claims. Having stayed the action until Judge Regensteiner's findings were made, we see no reason for further delay.[6]

■ We also carefully distinguish the claims before us from the remedies proposed. Defendants argue that the SEC's jurisdiction over exemption issues requires that any claim which may interfere with implementation of the proposed arrangements be first presented to the SEC. We disagree. Silberman does not contend that the SEC proceeding is biased or improper.

---

4. In addition, plaintiff's contention that the several mutual funds may not operate jointly under the modified formula because of the risk that the directors will seek to maximize the profits of the complex as a whole rather than any particular fund was rejected by the administrative law judge.

5. On December 14, 1979 Defendants filed a motion to dismiss.

6. Accordingly, the request for a stay will be denied. The motion for security of costs will also be denied at this time.

*Compare First Jersey Securities, supra.* Rather, he asserts that the Funds should not be permitted to avail themselves of any exemptions without proper shareholder approval. If plaintiff's request for an injunction was granted because allegedly misleading statements were made to shareholders in securing their approval, the Commission's ruling on the fairness of the modified formula would remain. Presumably, defendants would only be required to obtain shareholder approval before commencing joint distribution. Plaintiff's claims are not within the scope of the SEC exemption proceeding merely because the relief he seeks may affect continued implementation of an agreement under review by the SEC.

In the September 28 memorandum, I held that under § 38(c) defendants have the burden of proving the absence of any genuine issue that they procured the SEC order in good faith. Defendants request reconsideration of that holding, contending that actions taken prior to the issuance of the order are irrelevant in determining whether defendants acted in good faith in conformity with the order. They now argue that alleged misrepresentations in their application for a temporary order may constitute an estoppel, an issue as to which plaintiffs have the burden of proof. Because this complex question may be raised again at trial, additional comment may be helpful.

The good faith defense adds force to the Commission's rulings by insulating from liability those who act in good faith in conformity with an order. The grant of immunity makes it more likely that a party will promptly follow the Commission's order since it need not fear subsequent liability even if the order is later revoked or overturned. The Act permits a company to eliminate risk by placing facts before the Commission and obtaining a ruling.

If a company chooses to withhold or misrepresent facts in its presentation to the Commission, the purposes in granting the defense are eliminated. Prompt implementation of the order granting exemptions would be counterproductive where the Commission had not carefully considered the relevant facts. A court would not be upsetting the Commission's true view of the Act if the judgment was colored by a misrepresentation. To be sure, in considering a motion for summary judgment by defendants, placing the burden of proving the absence of any genuine issue of good faith in securing the order on defendants makes their task more difficult, but it also might promote greater candor with the SEC. Defendants' fear that good faith could never be shown on summary judgment is unfounded. Absent any evidence of bad faith, we would presume defendants acted honestly. Only because plaintiff has demonstrated that this material fact is in dispute, do we put defendants to their proof.