**DIMENSIONAL VISIONS GROUP, LTD.**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.\***

Civ. A. No. 92–4556.

United States District Court, E.D. Pennsylvania.

Aug. 24, 1992.

Reconsideration Denied Oct. 6, 1992.

* Editor's note—Caption amended by order of August 24, 1992.

**30**

Alan S. Fellheimer, Judith E. Fellheimer, Fellheimer & Eichen, Philadelphia, Pa., for plaintiff.

Thomas K. Kilkenny, Nat. Ass'n Securities Dealers, Inc., Philadelphia, Pa., Betty Grace Brooks, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiff, Dimensional Visions Group, Ltd. ("DVG"), filed this action seeking injunctive relief against defendant, the NASDAQ Stock Market ("NASDAQ"), a wholly owned subsidiary of National Association of Securities Dealers ("NASD"),[1] for violations of due process, federal securities laws, and NASDAQ procedures, as well as breach of contract and fraudulent misrepresentation. Plaintiff moved for a temporary restraining order to prevent NASDAQ from delisting plaintiff's securities. NASD consented to a restraining order requiring it to maintain DVG's listing until the hearing on the motion could be held on August 20, 1992. Defendant filed a motion to dismiss on several grounds on August 18, 1992. Plaintiff filed its response to the motion to dismiss on August 21, 1992.

### I. Factual Background

At the hearing, DVG introduced testimony of three witnesses to establish that DVG's delisting from NASDAQ would cause it irreparable harm by making it very difficult for DVG to raise needed capital: Ted Breidbart, an investment banker currently raising capital for DVG, George Smith, DVG's CEO and Chairman of the Board, and Lawrence Ceccarelli, a manufacturers' sales representative for DVG. Mr. Smith testified that Dimensional Visions Group is a developing company in the field of three-dimensional photography. Using its patented process, DVG produces flat photographs that have the appearance of a three-dimensional image. DVG is just beginning to receive orders for its product and is currently operating at a deficit. Mr. Smith testified that DVG now has an order of approximately $600,000 from one customer. In order to operate at a profit, DVG needs approximately $2 million in orders per year. Mr. Ceccarelli stated that he has had many promising contacts with prospective customers for DVG's product. There is clear market interest by compa-

1. Counsel for defendant informed the court at a hearing on August 20, 1992 that NASD is the proper party. Accordingly, the caption will be amended to substitute NASD for NASDAQ.

nies in many varied industries from comic book publishers to manufacturers of health products.

DVG's securities have been listed for trading on NASDAQ.[2] On March 2, 1992, a new NASD rule went into effect requiring securities listed on NASDAQ to have a bid price of $1.00 per share or to meet alternative capitalization requirements. Because DVG's bid price per share is less than $1.00, DVG was notified that it was not in compliance with the new rule. DVG requested that NASD grant an exception to the rule to give DVG sufficient time to comply. A hearing was held by NASD on July 29, 1992 to give DVG the opportunity to explain its plan to raise its stock price. On August 3, 1992, NASD informed DVG that its shares of stock would be removed from the list of securities traded on NAS-DAQ as of the next day. DVG filed this action on August 4, 1992. After a conference call with counsel for plaintiff and defendant on August 4, a consent order requiring NASD to continue DVG's listing until a hearing could be held on August 20, 1992, was entered.

Mr. Breidbart testified that he is currently raising capital on DVG's behalf. Mr. Breidbart has been working as a consultant for growth companies to help them raise capital for the last two and a half years. He stated that he is one hundred percent certain that he could raise $1 million for DVG in the next 30 days. Mr. Breidbart stated that the companies his clients are willing to invest in are usually listed on NASDAQ, the New York Stock Exchange ("NYSE"), or the American Stock Exchange ("Amex"). Mr. Breidbart said his customers are more comfortable with securities listed on those exchanges because they can follow the price in major newspapers and liquidate their shares readily. Mr. Breidbart also stated that it would be easier to raise capital for DVG if DVG's shares were listed on NASDAQ. However, Mr. Breidbart admitted that he did raise over $1 million in capital for at least one

company that was not listed on NASDAQ, NYSE, or Amex.

Defendant also contests this court's jurisdiction over the dispute because DVG has not yet exhausted its administrative remedies. Defendant argued that DVG would not be irreparably harmed by having its stock removed from NASDAQ because its stock could still be traded on the Philadelphia Stock Exchange and the Electronic Bulletin Board. Mr. Smith also testified that stocks available for trading on the Electronic Bulletin Board are not generally published in major newspapers. Mr. Smith also stated that DVG had determined not to renew its listing on the Philadelphia Stock Exchange because payment of the fee was not warranted in view of the light volume of stock transactions in that market.

## II. Discussion

 Ordinarily, a party is not entitled to judicial relief until the prescribed administrative remedy has been exhausted. *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir.1979). This principle insures the integrity of the administrative process by avoiding premature interruption of the proceedings and allowing the administrative agency to utilize its discretion and apply its expertise. *Id.* But administrative exhaustion is not required where: (1) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or (2) there is a clear and unambiguous statutory or constitutional violation.

Plaintiff does not dispute that it has not exhausted its administrative remedy. Plaintiff contends that the administrative procedure is clearly inadequate to prevent irreparable injury because NASD rules do not allow a stay of the delisting pending final disposition of the administrative appeal. Defendant admits that the administrative procedures do not give plaintiff a right to a stay but defendant claims that

---

**2.** DVG's securities were listed on the Philadelphia Stock Exchange as well but DVG decided to discontinue that listing. It was unclear at the time of the hearing whether DVG was still listed on the Philadelphia Exchange.

plaintiff will not be irreparably harmed by delisting.

Although plaintiff had at most two days notice of defendant's claim of lack of jurisdiction, the evidence necessary to support plaintiff's request for a temporary restraining order is the same as that establishing jurisdiction, ie. irreparable harm or clear violations of law. Therefore, the court finds that plaintiff had an adequate opportunity to present evidence of its irreparable injury and/or defendant's alleged statutory or constitutional violation at the hearing on the temporary restraining order and will now consider the court's jurisdiction over this subject matter.

### A. *Irreparable Injury*

■ DVG claims that having its shares delisted from NASDAQ will cause it irreparable harm because DVG will have great difficulty raising capital. As a new and developing company, DVG needs new capital to keep the business operating. If DVG's prospective investors cannot find its stock on a nationally recognized, liquid market like NASDAQ, NYSE, or Amex, DVG claims the investors will be less likely to buy DVG securities.

Although DVG will be harmed by the delisting of its shares, DVG has not proven that it will suffer irreparable injury. DVG has a unique product that has attracted interest from several prospective customers. Mr. Ceccarelli stated that his prospective customers for DVG include Columbia Records, Marvel Comics, DC Comics, Colgate–Palmolive, Revlon, and the World Wrestling Federation. Mr. Ceccarelli anticipated that sales to several of those companies would total over $1.5 million in the foreseeable future. DVG currently is producing its product for Ciba–Geigy under a $600,000 contract. Although its present operating expenses exceed income by $80,000 per month, it is presently capitalized at approximately $1.2 million. According to the testimony of plaintiff's witnesses, the company should be able to reach its approximately $2 million "break even" point very soon without additional investments.

Even if DVG needs $1 million in additional capital to remain viable, Mr. Breidbart's testimony was that it would be more difficult but not impossible to raise money if DVG's stock were no longer listed on NASDAQ. Mr. Breidbart testified that he raised about $1 million for another company whose stocks were traded on the Electronic Bulletin Board. He did not say that he could not also raise $1 million for DVG if its stock were listed on the Electronic Bulletin Board rather than on NASDAQ.

Because the evidence showed that DVG is likely to begin operating at a profit soon, and its effort to raise money would be hindered, but not precluded, there is no irreparable harm and no exception to the administrative exhaustion requirement. The court cannot exercise jurisdiction based on irreparable injury.

### B. *Clear and Unambiguous Violation*

■ Plaintiff cannot rely on a clear and unambiguous statutory or constitutional violation to support this court's jurisdiction. In support of its motion for a temporary restraining order, DVG contends that other companies in similar situations have been allowed to remain listed on NASDAQ and therefore NASD's decision to delist DVG is arbitrary and capricious. Any system allowing discretionary exceptions may result in the grant of some and denial of others. NASD gave DVG notice that DVG was not in compliance with the $1 bid price requirement. DVG was given an opportunity to respond in writing, request an exception, and present its position in a hearing. There is also an administrative review process, first to the NASD Board of Governors, then to the Securities and Exchange Commission, and finally, court review. Lack of a stay pending this appellate process does not render it inadequate. *See First Jersey Securities, Inc.*, 605 F.2d 690. The hearing transcript did not plaintiff's contention that NASD's exercise of discretion was arbitrary and capricious. *See* Defendant's Exh. 2. Defendant did not clearly and unambiguously violate whatever process was due under the Constitution.

■ DVG also contends that defendant failed to comply with the procedures for delisting set forth in Rule 12d2–2, promul-

gated under § 12 of the Securities Exchange Act, 15 U.S.C. § 78*l*. NASD contends that Rule 12d2–2 does not apply to it since it is not a national securities exchange. It is not clear whether Rule 12d2–2 would apply to NASDAQ. Because the applicability of Rule 12d2–2 to NASDAQ is uncertain, failure to comply with that rule cannot be a clear and unambiguous violation warranting an exception to the administrative exhaustion requirement.

Because plaintiff has failed to exhaust its administrative remedy and no exception to exhaustion is present, the complaint will be dismissed for lack of jurisdiction.