[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 12, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11080
Non-Argument Calendar
_____

D. C. Docket No. 05-00138-CV-3

JOSE LUIS HILARIO-PAULINO,

Petitioner-Appellant,

versus

MICHAEL PUGH,
Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 12, 2006)

Before ANDERSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Luis Hilario-Paulino ("Hilario"), a federal prisoner proceeding pro se,

appeals the district court's denial of his habeas corpus petition brought pursuant to 28 U.S.C. § 2241. For the reasons that follow, we AFFIRM.

## I. Background

Hilario is a federal prisoner confined to the McRae Correctional Facility ("MCF"), a prison operated by Corrections Corporation of America ("CCA") pursuant to a contract with the Bureau of Prisons ("BOP"). The contract between the BOP and CCA provides that CCA shall follow the BOP's Program Statement 5270.07, Inmate Discipline and Special Housing Units.

A Disciplinary Hearing Officer disciplined Hilario for an infraction, imposing as sanctions the disallowance of twenty-seven days of Good Conduct Time ("GCT") and the forfeiture of twenty days of GCT. Hilario appealed the imposition of sanctions to National Inmate Appeals ("NIA"), which upheld the sanctions.

Hilario then filed the instant habeas petition, challenging the imposition of sanctions on the grounds that (1) the BOP unlawfully delegated its statutory authority to discipline inmates to CCA; and (2) the BOP's Program Statement does not authorize MCF, a privately run prison, to impose disciplinary sanctions.

Hilario argued that, despite the fact that the BOP has authority over federal prisoners, according to 28 C.F.R. § 0.97, the BOP is only permitted to delegate its

2

authority over inmate discipline to governmental entities. Hilario further argued that the Program Statement, according to its plain language, only applies to federal inmates and not to those held in privately run facilities. He thus argued that the Program Statement does not authorize MCF to impose disciplinary sanctions, and he demanded that the sanctions imposed on him be removed.

The magistrate judge rejected Hilario's arguments, concluding that although MCF is not a federal prison, the BOP's delegation of authority to impose disciplinary sanctions was lawful because the BOP retained final decision-making authority regarding inmate discipline. The district court adopted the magistrate judge's recommendations and dismissed the petition. Hilario now appeals.

## II. Standard of Review

We review the district court's denial of habeas corpus relief de novo. Byrd v. Hasty, 142 F.3d 1395, 1396 (11th Cir. 1998). We review questions of statutory interpretation and other issues of law de novo. See United States v. Trainor, 376 F.3d 1325, 1330 (11th Cir. 2004).

## III. Discussion

Hilario contends that the BOP impermissibly delegated its authority to discipline inmates to CCA, in violation of both 18 U.S.C. § 4042 and 28 C.F.R. §

3

0.97 promulgated thereunder.[1] He argues that the BOP's contract with CCA

violates the statute and regulation because both forbid the delegation of the BOP's

disciplinary authority to private entities.

Statutory Violation

The statute provides, in pertinent part, that the BOP shall:

(1) have charge of the management and regulation of all Federal penal and correctional institutions; . . . [and] (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States. . .

18 U.S.C. § 4042(a). Congress has also provided that "[t]he Attorney General may

establish and conduct industries, farms, and other activities and classify the

inmates; and provide for their proper government, discipline, treatment, care,

rehabilitation, and reformation." 18 U.S.C. § 4001(b)(2).

When reviewing an agency's interpretation of a statute it administers, we

apply the Chevron two-step inquiry. See Chevron U.S.A., Inc. v. Natural Res. Def.

---

[1] Hilario's arguments are somewhat unclear, as he seems to believe that Congress drafted 28 C.F.R. § 0.97. It appears, however, that he is challenging the BOP's delegation as both contrary to Congress's intent and as a violation of its own regulation. In any event, we must address the question of whether the agency has exceeded is statutory authority as part of our analysis of the agency's interpretation of its regulation. See, e.g., John F. Manning, Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules, 96 Colum. L. Rev. 612, 627 n. 78 (1996) ("It is important to note that because a regulation must be consistent with the statute it implements, any interpretation of a regulation naturally must accord with the statute as well. . . . [T]o get to Seminole Rock deference, a court must first address the straightforward Chevron question whether an agency regulation, as interpreted, violates the statute. Seminole Rock addresses the further question whether the agency's interpretation is consistent with the regulation.").

4

Council, Inc., 467 U.S. 837, 842-44 (1984). First, we determine "whether Congress has directly spoken to the precise question at issue." Id. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If Congress has not directly addressed the matter, however, or if the statute is ambiguous with respect to the matter, we move to Chevron's second step to decide "whether the agency's [regulation] is based on a permissible construction of the statute." Id. at 843.

Here, Congress's grant of authority to the agency is quite broad. Accordingly, we will not disturb the agency's interpretation of the extent of its statutorily delegated authority unless such interpretation is unreasonable. Id. at 843-44.

The BOP interprets the statute in such a way that it permits the agency to delegate a portion of the authority to discipline prisoners in privately run institutions to private actors, though reserving for itself the role of final arbiter. We cannot say that such an interpretation is unreasonable.

The BOP's partial delegation is consistent with similar arrangements between other agencies and private parties. For example, the Maloney Act, 15 U.S.C. § 78o-3 (1982), which provides for some self-regulation of the securities

industry, authorizes a dealer association to discipline members , but also provides for a right of appeal to the Securities and Exchange Commission ("SEC"). Todd & Co., Inc. v. SEC, 557 F.2d 1008, 1012 (3d Cir. 1977). "After affording the opportunity for a hearing, the [SEC] determines whether the petitioner committed the charged acts and whether they are in violation of the Association's rules"; it is not restricted to the record before the Association. Id. "The [SEC] may then reduce, cancel, or leave undisturbed the penalty imposed." Id. The Third Circuit upheld this delegation because the SEC:

> (1) has the power, according to reasonably fixed statutory standards, to approve or disapprove the Association's rules; (2) must make de novo findings aided by additional evidence if necessary, and (3) must make an independent decision on the violation and penalty, the court found no merit in the unconstitutional delegation argument.

Id. at 1012-13. In a prior decision, the Second Circuit upheld the delegation on the same basis. See R.H. Johnson v. SEC, 198 F.2d 690, 695 (2d Cir. 1952).

Accordingly, in this context, the fact that the BOP provides a final layer of de novo review allays any concerns regarding the delegation of the initial stages of disciplinary proceedings, which are brought pursuant to and administered according to BOP guidelines. See Ira P. Robbins, The Impact of the Delegation Doctrine on Prison Privatization, 35 UCLA L. Rev. 911, 922 (1988) (predicting that delegation of disciplinary functions to an operator of a private prison will be

6

upheld in situations where the "private company maintain[s] control over such proceedings, [if] the corrections agency [] make[s] de novo findings and an independent decision on the violation and the penalty").

Accordingly, the BOP's interpretation of its statutory powers and delegation of disciplinary functions are lawful.

Violation of Regulation

We next consider whether the BOP's delegation of disciplinary authority to CCA violates its own regulations.

In promulgating 28 C.F.R. § 0.97, the Attorney General authorized the Director of the BOP "to redelegate to any of his subordinates any of the authority, functions or duties vested in him . . . . A redelegation of authority is limited to employees of the Department of Justice." Id. Accordingly, Hilario argues that because the Director of the BOP is only authorized to redelegate his authority to "employees of the Department of Justice," the BOP's delegation of the authority to discipline inmates to CCA constitutes a violation of § 0.97.

The United States contends that it has not violated the redelegation limitation in § 0.97 because the BOP Administrator of NIA retained the authority to review de novo the sanction imposed on Hilario. Thus, the United States appears to argue that it did not "delegate" its authority to discipline inmates to

CCA within the meaning of the regulation.

By providing in its contract with CCA that CCA shall follow the BOP's Program Statement for disciplinary procedures, the BOP has indicated that it interprets the delegation of part of its disciplinary functions to CCA to be consistent with § 0.97.

We accord "substantial deference" to an agency's interpretation of its own regulation; that interpretation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (quoting <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414 (1945)) (internal quotation marks omitted).

Because the BOP's interpretation of the term "redelegate" in § 0.97 is neither plainly erroneous nor inconsistent with the regulation, we defer to that interpretation.

<u>The Program Statement</u>

Hilario's final argument is that the BOP's Program Statement, by its own terms, does not apply to prisoners held in privately operated facilities. The Program Statement provides, in pertinent part:

> So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules. The provisions of this rule apply to all persons committed to

8

the care, custody, and control (direct and constructive) of the Bureau of Prisons.  Examples of persons to whom this policy applies include, but are not limited to, an inmate who is on pretrial status, or on writ, or on escorted trip or furlough, or who is escorted by U. S. Marshals or other federal law enforcement officials, or who is in a camp, contract facility, (other than contract CCCs) or hospital, or who is returned to Bureau custody from a contract facility (includes contract CCCs). These provisions do not apply to a federal inmate designated to a non-federal facility (e.g., inmates serving Federal sentences in state facilities or contract CCCs)

(Emphasis added.)

The United States suggests, without providing any explanation, that MCF is a "contract facility," and therefore within the scope of the Program Statement, rather than a "contract CCC," which would apparently take MCF outside of that scope.  The quoted portion of the Program Statement is certainly ambiguous on this matter, and the United States has done nothing to clarify that ambiguity. However, by providing in its contract with CCA that CCA shall apply the Program Statement, the BOP has implicitly interpreted the relevant language such that CCA is a contract facility and not a contract CCC.

Because the BOP's delegation of part of its disciplinary authority was within its statutory mandate and consistent with its regulation and Program Statement, we AFFIRM.